IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAHMI AHMED MOHARAM, <br><br>  Plaintiff, <br><br> v. <br><br> U.S. FEDERAL BUREAU OF INVESTIGATION <br> 935 Pennsylvania Avenue, NW <br> Washington, D.C. 20535, <br><br> U.S. DEPARTMENT OF JUSTICE <br> 950 Pennsylvania Avenue, NW <br> Washington, D.C. 20530, and <br><br> U.S. DEPARTMENT OF STATE <br> 2201 C St., NW <br> Washington, D.C. 20520 <br><br>  Defendants. | Civil Action No. [    ] |

# **COMPLAINT**

1. Plaintiff Fahmi Ahmed Moharam brings this action against the Federal Bureau of Investigation (FBI), the United States Department of Justice (DOJ), and the United States Department of State (DOS) to compel compliance with the Freedom of Information Act (FOIA) by releasing records relating to Mr. Moharam. *See* 5 U.S.C. § 552. Mr. Moharam alleges as follows:

2. Mr. Moharam is a United States citizen who is stuck in a Catch-22 of the government's making and has been denied his lawful rights to freely travel by airplane.

1

3. For years, Mr. Moharam has, through FOIA requests, sought access to FBI and DOS records regarding his placement on the No Fly List.

4. Rather than comply with their obligations under FOIA, however, the FBI and DOS have brushed off or simply ignored Mr. Moharam's requests.

5. Indeed, more than two years after the Department of Homeland Security (DHS) told Mr. Moharam that he was on the No Fly List (as DHS was required to do), the FBI absurdly claimed it could not reveal whether records regarding any investigation into Mr. Moharam exist in its files because such information may indicate he is on the No Fly List. Specifically, the FBI stated that "To the extent that [Mr. Moharam's] request seeks access to records that would either confirm or deny an individual's placement on any government watch list, the FBI properly refused to confirm or deny the existence of any such records because their existence is protected from disclosure pursuant to 5 U.S.C. § 552(b)(7)(E) . . . it is reasonably foreseeable that confirming or denying an individual's placement on any government watch list would harm the interests protected by this exemption."

6. DOS has not responded to Mr. Moharam's requests at all, except to provide an estimated date of completion that has long since passed.

7. Mr. Moharam therefore brings this action to compel responses to his FOIA responses from the FBI, DOJ, and DOS.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

9. Venue is proper pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

### A. Plaintiff

10. Plaintiff Fahmi Ahmed Moharam was born and raised in Yemen before emigrating to the United States and acquiring derivative United States citizenship. He currently resides and works in Indiana.

### B. Defendants

11. Defendant Federal Bureau of Investigation is a component of the Department of Justice and is a federal agency within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551. Defendant FBI is headquartered at 935 Pennsylvania Ave. NW, Washington, D.C. 20535. Defendant FBI has possession, custody, and control of records that Mr. Moharam seeks.

12. Defendant Department of Justice is a federal agency within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551. Defendant DOJ is headquartered at 950 Pennsylvania Ave. NW, Washington, D.C. 20530. Defendant DOJ has possession, custody, and control of records that Mr. Moharam seeks.

13. Defendant Department of State is a federal agency within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551. Defendant DOS is headquartered at 2201 C St. NW, Washington, D.C. 20520. Defendant DOS has possession, custody, and control of records that Mr. Moharam seeks.

## FACTUAL ALLEGATIONS

14. Upon information and belief, Mr. Moharam was placed on the No Fly list no later than October 2017, when Mr. Moharam was denied the right to return to the United States from a religious pilgrimage in Saudi Arabia by air.

15. In an effort to challenge his placement on the No Fly List, Mr. Moharam submitted an inquiry to the DHS Travel Redress Inquiry Program (DHS TRIP) in or about October 2017.

16. Mr. Moharam was able to return to the United States in late 2017 pursuant to the one-time waiver process available to U.S. citizens and lawful permanent residents who are on the No Fly List. Defendant FBI plays a role in in the one-time waiver process. In or about November 2017, prior to his return, Mr. Moharam went to the U.S. Consulate in Jeddah, Saudi Arabia at the government's request. He was questioned by individuals at the Consulate.

17. In or about February 2018, DHS confirmed to Mr. Moharam that he had been placed on the No Fly List. Mr. Moharam then filed an appeal requesting the reasons for his placement on the No Fly List but did not receive a response for two years. In February 2020, DHS finally provided him a scanty, two-sentence-long unclassified "summary", which DHS claimed was the only information it could provide regarding the reasons for his placement on the No Fly List. Specifically, DHS stated that Mr. Moharam was: "on the U.S. Government's No Fly list because the Government has concerns about [his] activities during frequent and extended travel to Yemen between 2011 and 2017. The information [he] shared during [his] interview at the U.S. Consulate in Jeddah in November 2017 did not assuage the Government's concerns." *See* Ex. A. Upon information and belief, defendant FBI also plays a role in determining what information will be released in any unclassified summary provided to a U.S. citizen or lawful permanent resident on the No Fly List. That response from DHS fell far short of providing the information that Mr. Moharam needs to mount a meaningful challenge to his placement on the No Fly List. Mr. Moharam is pursuing further appeal of his placement on the No Fly List pursuant to DHS procedures.

18. Mr. Moharam made FOIA requests to the FBI and DOS in order to gather information and documentation necessary for his DHS TRIP appeal. However, the FBI and DOS have unlawfully denied him access to records that would allow him to mount a meaningful challenge to the government's unilateral decision to not let him fly on an airplane. With his DHS TRIP appeal due October 19, 2020, Mr. Moharam cannot afford to wait any longer for the FBI and DOS to comply with their statutory obligations to provide him with documents and information.

**A. The FBI's Response to Mr. Moharam's FOIA Requests**

19. On or around April 8, 2019 , Mr. Moharam, through his counsel, sent a request under FOIA to the FBI using the online eFOIPA Request System, seeking the following records:

   i. Any records created, used, or maintained by the FBI referring to Mr. Moharam, including, but not limited to records relating to Mr. Moharam's placement on the No Fly List, the Selectee List, the Terrorist Screening Database, or any other information pertaining to Mr. Moharam on other government watch lists controlled by or accessible to the FBI;

   ii. Any records relating to Mr. Moharam's nomination by the FBI or any other federal agency for the federal No Fly List or Selectee List;

   iii. Any records maintained, received, or sent, or processed by the Terrorist Screening Center relating to Mr. Moharam's placement on the No Fly List or Selectee List;

   iv. Any records relating to Mr. Moharam's detentions and questioning by airport officials, FBI International Operations Division attaches or other agents at the U.S. Embassy in Jeddah, Saudi Arabia, or FBI agents at airports; including but not limited to information related to Mr. Moharam's placement on the No Fly List in October of 2017;

   v. Any records created, used or maintained by the FBI relating to the FBI's interest in, questioning of, and conversations with Mr. Moharam, including any 302 forms referencing Mr. Moharam; and

   vi. All records created, sent, received, referenced, and/or used in fulfilling and/or responding to this Request.

A true and correct copy of the requests sent to DOS is attached here as Ex. B.  Mr. Moharam's counsel received a receipt dated April 15, 2019 confirming submission of this request.  A true and correct copy of this confirmation of receipt of Mr. Moharam's request by the FBI is attached as Ex. C.

20. By letter dated August 22, 2019, the FBI responded and claimed that it was "unable to identify records responsive" to Mr. Moharam's request.  The FBI further claimed that it had "conducted a search of the places reasonably expected to have records" based upon the information provided in Mr. Moharam's FOIA request.  The FBI also stated that it closed the request.  A true and correct copy of this correspondence is attached as Ex. D.

21. By letter from his counsel dated November 19, 2019, Mr. Moharam appealed the FBI's response to the DOJ Office of Information Policy.  Mr. Moharam's counsel explained that the FBI's initial response to Mr. Moharam's FOIA request was wholly inadequate because the FBI had not shown that it conducted a search reasonably calculated to uncover all relevant documents.

22. Mr. Moharam's counsel further explained why the FBI's conclusory statement that it was unable to identify any records was not plausible.

23. The Terrorist Screening Center—the repository for all watchlist records—is a component of the FBI and maintains the No Fly List database.

24. Because the government has admitted that Mr. Moharam is on the No Fly List, the Terrorist Screening Center, and hence the FBI, must have records regarding his placement on that watchlist, including but not limited to records regarding any investigation that resulted in his placement on the list and the approval of his request for a one-time waiver to return to the United States.

25. On February 28, 2020, Matthew W. Hurd, Acting Chief, Administrative Appeals Staff of DOJ, responded to Mr. Moharam's appeal by letter delivered via email (the "February 28, 2020 Letter"). A true and correct copy of the February 28, 2020 Letter is attached here as Ex. E.

26. The February 28, 2020 Letter affirmed the FBI's "response" to Mr. Moharam's FOIA request and stated that Mr. Hurd had "determined that the FBI's action was correct and that it conducted an adequate, reasonable search for such records." The February 28, 2020 Letter provided no additional detail regarding the scope of any search of the FBI's records and did not include any information regarding what potential locations for records the FBI searched. Nor did the February 28, 2020 letter address the fact that approximately a week earlier, DHS TRIP had provided Mr. Moharam an unclassified summary of some of the reasons allegedly supporting his placement on the No Fly List. Upon information and belief, the process for determining the contents of this unclassified summary necessarily includes input from the FBI.

27. The February 28, 2020 Letter further claimed that the FBI properly refused to confirm or deny the existence of any records relating to Mr. Moharam's placement on any watchlist because providing such information would imperil an law enforcement interest protected by Exemption 7(E) to the Freedom of Information Act.

28. However, because DHS has officially acknowledged that Mr. Moharam is on the No Fly List, any information regarding the existence of records regarding Mr. Moharam in the FBI's files would not "harm the interests protected by" exemption 7(E). The government, through its previous disclosure of Mr. Moharam's status and by providing an unclassified summary of the information allegedly supporting the basis for his placement, has waived any claim that it would be harmed by the disclosure of information that would confirm or deny Mr. Moharam's placement on the No Fly List.

29. Further, because Mr. Moharam has retained counsel with appropriate security clearances, the FBI can and should produce any responsive classified material that is not otherwise exempt from disclosure to his security-cleared counsel.

30. Defendants FBI and DOJ have no lawful basis for failing to produce any responsive records requested by Mr. Moharam.

**B. Mr. Moharam's FOIA Request to the State Department**

31. On April 10, 2019, Mr. Moharam, through counsel, submitted a FOIA request to DOS via certified letter.

32. Mr. Moharam requested the following records from DOS:

   i. Records concerning the investigation which took place that resulted in Mr. Moharam being placed on the No Fly List and subsequently granted a waiver of return:

   a. Notes taken by and any reports filed by individuals who interrogated Mr. Moharam between October 15, 2017 and December 31, 2017 at the U.S. Embassy in Jeddah, Saudi Arabia;

   b. Any audio and/or video recording of the interrogation of Mr. Moharam that took place between October 15, 2017 and December 31, 2017 at the U.S. Embassy in Jeddah, Saudi Arabia;

   c. A copy of any statements taken from Mr. Moharam at the U.S. Embassy in Jeddah, Saudi Arabia during the interrogation that took place between October 15, 2017 and December 31, 2017; and

   d. Any communications within the U.S. Embassy in Saudi Arabia, between the U.S. Embassy in Saudi Arabia and any other U.S. governmental bodies, between the U.S. Embassy in Saudi Arabia and any foreign government, between the U.S. Embassy in Saudi Arabia and any private entity, or between the DOS and any of the above regarding the interrogation of Mr. Moharam that took place between October 15, 2017 and December 31, 2017.

   ii. A copy of all passport applications filed by Mr. Moharam.

   iii. All emails addressed to dihyemyakoob@gmail.com from the U.S. Embassy in Jeddah or from any other office of the U.S. Government from October 15, 2017 to present concerning Mr. Moharam.

    iv.    All records concerning a Bureau of Diplomatic Security Services investigation of Mr. Moharam including, but not limited to:

        a.    Any audio and/or video recording of an interview of Mr. Moharam by agents of the Diplomatic Security Service, including agents in Jeddah, Saudi Arabia, or any written notes or report of such interview; and

        b.    Any communications shared between the Bureau of Diplomatic Security Service and the United States Attorney's Office for the Northern District of Indiana concerning Mr. Moharam from October 15, 2017 to the present.

    v.    A copy of all communications between DOS and the United States Department of Homeland Security, including but not limited to Citizenship and Immigrations Services, Transportation Security Administration, and Customs and Border Protection, concerning Mr. Moharam from October 15, 2017 to the present.

    vi.    A copy of all communications between DOS and the FBI concerning Mr. Moharam.

    vii.    All records created, sent, received, referenced, and/or used in fulfilling and/or responding to Mr. Moharam's FOIA request.

A true and correct copy of the requests sent to DOS is attached here as Ex. F.

33.    DOS responded to the request by email on October 25, 2019, providing only an estimated date of completion for the request. DOS estimated that the request would be complete by November 8, 2019.

34.    To date, DOS has not communicated further with either Mr. Moharam or his counsel regarding his FOIA request and has not provided any documents or formal response to Mr. Moharam's FOIA request.

35.    Defendant DOS has no lawful basis for failing to produce any responsive records requested by Mr. Moharam.

36.    Mr. Moharam has been on the No Fly List for nearly three years. He has been unable to see his wife and children in Yemen for nearly three years. Further delay in production of any

records that can assist him in securing his removal from the No Fly List will needlessly prolong his separation from his family.

### FIRST CLAIM FOR RELIEF
### Freedom of Information Act, 5 U.S.C. §§ 552(a)(3) & (a)(6);
### Failure to Respond Within Time Required (DOS)

37. Mr. Moharam re-alleges and incorporates by reference all other paragraphs.

38. Pursuant to FOIA, "[e]ach agency, upon any request for records [under FOIA], shall . . . determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request . . . ." 5 U.S.C. § 552(a)(6)(A)(i). "Any person making a request to any agency for records under [FOIA] shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions . . . ." 5 U.S.C. § 552(a)(6)(C)(i).

39. Defendant DOS is in violation of FOIA by failing to respond to Mr. Moharam's requests within the statutorily prescribed time limit and by unlawfully withholding records responsive to Mr. Moharam's requests.

40. Accordingly, Mr. Moharam is entitled to an order compelling the DOS to grant Mr. Moharam's request for records and to release, as soon as practicable, any responsive records.

### SECOND CLAIM FOR RELIEF
### Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B);
### Wrongful Withholding of Non-Exempt Responsive Records (all defendants)

41. Mr. Moharam re-alleges and incorporates by reference all other paragraphs.

42. Mr. Moharam properly requested records within the possession, custody, and control of the FBI, DOJ, and DOS.

43. The FBI, DOJ, and DOS are agencies subject to FOIA, and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

44. The DOS is wrongfully withholding and the FBI and DOJ wrongly withheld non-exempt agency records requested by Mr. Moharam by failing to produce non-exempt records responsive to his FOIA.

45. The FBI, DOJ, and DOS are wrongfully withholding non-exempt agency records requested by Mr. Moharam by failing to segregate exempt information in otherwise non-exempt records responsive to his FOIA request.

46. The FBI, DOJ, and DOS' failure to provide all non-exempt responsive records violates FOIA.

## REQUEST FOR RELIEF

WHEREFORE, Mr. Moharam respectfully request that the Court:

a. Declare that exemption 7(E) to 5 U.S.C. § 552 is not applicable to any information that may confirm or deny Mr. Moharam's placement on the No Fly List, including, but not limited to, information regarding the existence of any such records;

b. Order defendants, by a date certain, to conduct an adequate search that is reasonably likely to lead to the discovery of any and all records responsive to Mr. Moharam's requests;

c. Order defendants, by a date certain, to produce to Mr. Moharam any and all non-exempt records or portions of records responsive to Mr. Moharam's request, as well as an index of any records or portions of records withheld due to a claim of exemption pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973);

d. Order defendants, by a date certain, to produce classified records or portions of classified records, which are responsive to Mr. Moharam's request and are not otherwise exempt from disclosure under any exemption to 5 U.S.C. § 552, to Mr. Moharam's security-cleared counsel;

e. Enjoin defendants from continuing to withhold any and all non-exempt records responsive to Mr. Moharam's FOIA request;

f. Award Mr. Moharam attorneys' fees and other reasonable costs incurred in this action, *see* 5 U.S.C. § 552(a)(4)(E); and

g. Grant Mr. Moharam such other relief as the Court deems appropriate.

Dated: September 14, 2020

Respectfully submitted,

By: /s/ Robert S. Litt

Robert S. Litt (DC Bar No. 312470)
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, D.C. 20006
Telephone: (202) 887-1588
rlitt@mofo.com

Adam J. Hunt (pursuant to LCvR 83.2(g))
Janie C. Buckley (pursuant to LCvR 83.2(g))
MORRISON & FOERSTER LLP
250 W. 55th St.
New York, NY 10019
Telephone: (212) 468-8000
adamhunt@mofo.com
jbuckley@mofo.com

-and-

**CLEAR PROJECT**
**MAIN STREET LEGAL SERVICES, INC.**

*/s/ Ramzi Kassem*
Ramzi Kassem
(pursuant to LCvR 83.2(g))
Naz Ahmad
(pursuant to LCvR 83.2(g))
Princess Masilungan
(pursuant to LCvR 83.2(g))
CUNY School of Law
2 Court Square
Long Island City, NY 11101
T: (718) 340-4558
F: (718) 340-4478

E: ramzi.kassem@law.cuny.edu

*Counsel for Plaintiff Fahmi Ahmed Moharam*